IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| BARBARA BURESS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| DYLAN BRUNS, MARIO CARRUTH, | ) JURY TRIAL DEMANDED |
| MALCOLM COLLINS, JOHN DOE(S), | ) |
| ANDREW GROSS, MICHAEL HARDY, | ) |
| DEXTER MOSES, MICHAEL RAWLINGS | ) |
| DOREEN SHELTON, FRANK WINSTON, | ) |
| and THE CITY OF MEMPHIS, TENNESSEE, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR EXCESSIVE FORCE, WRONGFUL ARREST, FIRST-AMENDMENT RETALIATION, AND OTHER UNLAWFUL AND INJURIOUS POLICE CONDUCT**

## NATURE OF THE ACTION

1. This is an action for damages sustained by a United States citizen and political activist at the hands of known and unknown officers of the Memphis Police Department (the "MPD"), who unlawfully targeted, arrested, assaulted, and prosecuted her; against ranked supervisors of the MPD responsible the conduct of their subordinates and for directing, encouraging, participating in, or exhibiting reckless indifference to the outrageous and abusive conduct of said officers; against the Deputy Chief responsible for implementing and overseeing methods and operations of the Organized Crime Unit ("OCU") and for fostering, maintaining, and encouraging a culture and attitude within the OCU hostile to certain political activists and intolerant of certain activity protected under the First Amendment; against the Director of Police as the supervisory officer of the other

defendants and for his failure to take corrective action with respect to police personnel whose violent and abusive propensities were notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct; and against the City of Memphis, Tennessee (the "City") as the employer of the police personnel, for its intentional or reckless failure to exercise reasonable oversight over the MPD to assure proper training and supervision of the personnel or to implement meaningful procedures to discourage lawless official conduct, and for its endorsement of, or reckless indifference to, a culture and attitude, within the MPD at large, hostile to certain political activists and intolerant of certain activity protected under the First Amendment.

## JURISDICTION AND VENUE

2.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988; the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States; the Tennessee Governmental Liability Act; and the Tennessee common law.

3.  This Court's jurisdiction over the causes alleged herein is predicated on 28 U.S.C. §§ 1343(3), (4) and 1331.

4.  Venue for this action is properly laid in the Western District of Tennessee, within the territorial boundaries of which district occurred all acts, transactions, and events pertinent hereto.

## PARTIES

5.  Plaintiff Barbara Buress is, and at all times pertinent hereto was, a resident of Shelby County, Tennessee and a citizen of the United States. She is also a licensed practical nurse and an outspoken advocate for her community.

6.  At all times pertinent hereto, defendant Dylan Bruns, IBM 13315, was a police officer employed and commissioned by the MPD to perform duties in the City and was assigned to the Raines Station and Raines Station Task Force. At all pertinent times,

he was acting individually and in such capacity as the agent, servant, and employee of the City. He is sued individually, for his actions as an individual, and in his official capacity.

7. At all times pertinent hereto, defendant Mario Carruth, IBM 13517, was a police officer employed and commissioned by the MPD to perform duties in the City and was assigned to the Raines Station and Raines Station Task Force. At all pertinent times, he was acting individually and in such capacity as the agent, servant, and employee of the City. He is sued individually, for his actions as an individual, and in his official capacity.

8. At all times pertinent hereto, defendant Malcolm Collins, IBM 13517, was a police officer employed and commissioned by the MPD to perform duties in the City and was assigned to the Raines Station and Raines Station Task Force. At all pertinent times, he was acting individually and in such capacity as the agent, servant, and employee of the City. He is sued individually, for his actions as an individual, and in his official capacity.

9. At all times pertinent hereto, defendant Andrew Gross, IBM 13634, was a police officer employed and commissioned by the MPD to perform duties in the City and of unknown assignment. At all pertinent times, he was acting individually and in such capacity as the agent, servant, and employee of the City. He is sued individually, for his acts as an individual, and in his official capacity.

10. At all times pertinent hereto, defendant Michael Hardy was a police officer employed and commissioned by the MPD to perform duties in the City and was commissioned as the Deputy Chief Special Operations, and as such was the chief commanding officer of the OCU. At all pertinent times, he was acting individually and in such capacity as the agent, servant, and employee of the City. He is sued individually, for his actions as an individual, and in his official capacity.

11. At all times pertinent hereto, defendant Dexter Moses, IBM 5602, was a police officer employed and commissioned by the MPD to perform duties in the City, held

the rank of Lieutenant, and was assigned to the Airways Station. At all pertinent times, he was acting individually and in such capacity as the agent, servant, and employee of the City. He is sued individually, for his actions as an individual, and in his official capacity.

12. At all times pertinent hereto, defendant Doreen Shelton, IBM 3158, was a police officer employed and commissioned by the MPD to perform duties in the City, held the rank of Major, and was assigned to the Airways Station. At all pertinent times, she was acting individually and in such capacity as the agent, servant, and employee of the City. She is sued individually, for her actions as an individual, and in her official capacity

13. At all times pertinent hereto, defendant Frank Winston, IBM 9568, was a police officer employed and commissioned by the MPD to perform duties in the City, held the rank of Lieutenant, and was assigned to the Raines Station. At all pertinent times, he was acting individually and in such capacity as the agent, servant, and employee of the City. He is sued individually, for his actions as an individual, and in his official capacity.

14. At all times pertinent hereto, defendant(s) "John Doe(s)" was (were) a police officer (police officers) employed by MPD, of unknown identity(-ies) and rank(s). At all pertinent times, John Doe(s) was (were) acting in such capacity as the agent(s), servant(s), and employee(s) of the City. He (they) is (are) sued individually, for his (their) actions as an individual (as individuals), and in his (their) official capacity(-ies).

15. At all times pertinent hereto, defendant Michael Rawlings was the duly appointed director of the MPD. As such, he was the commanding officer of defendants Bruns, Carruth, Collins, Gross, Hardy, Moses, Shelton, Winston, and Doe(s), being thus responsible for these defendants' training, supervision, and conduct. He was also legally responsible for enforcing the policies and regulations of the MPD and for ensuring that all MPD personnel obeyed the laws of the State of Tennessee and of the United States. At all pertinent times, Director Rawlings was acting individually and in such capacity as the

4

agent, servant, representative, and employee of the City. He is sued individually, for his actions as an individual, and in his official capacity.

16. The above-listed defendants may be served with process at their respective individual residences or at 170 North Main Street, Memphis, Tennessee 38103.

17. The defendant City is a municipal corporation chartered by, and located within the territorial boundaries of, the State of Tennessee. At all relevant times, the City employed defendants Bruns, Carruth, Collins, Gross, Hardy, Moses, Shelton, Winston, Doe(s), and Rawlings. It is sued as a person under 42 U.S.C. § 1983.

18. The City may be served through the City Attorney, Bruce McMullen, at 125 North Main Street, Room 336, Memphis, Tennessee 38103.

19. At all times pertinent hereto and in all their actions or omissions as described herein, defendants Bruns, Carruth, Collins, Gross, Hardy, Moses, Shelton, Winston, and Doe(s), and Rawlings were acting under color of law and pursuant to their authority as police personnel.

## ALLEGATIONS OF FACT

20. In the days following the September 17, 2018 shooting of Montavious Banks by officers of the MPD, in reaction to and frustration about repeated police shootings of young black men in Memphis, in sympathetic solidarity with the Banks family, and in the face of a perceived bureaucratic cover-up of the facts surrounding Banks's shooting, activists and other members of the community engaged in a series of peaceful demonstrations. These demonstrations were intended to provide a nonviolent outlet for the impassioned frustrations of a community and to bring attention to the increasingly uneasy relationship between that community and the MPD, perceived by many to be growing in its militarization. The plaintiff, Ms. Buress, was an outspoken member of said community and a leader in said demonstrations.

21. At approximately 6:00 PM on September 19, 2018, a large, nonviolent demonstration began gathering at or around the City intersection of Truitt Street and Airways Boulevard (the "Airways Site"). News media and police were soon on scene.

22. As the crowd grew, the demonstrators at the Airways Site became increasingly vocal, shouting sharp criticisms of perceived police policy, expressions of community frustration, and chants of solidarity.

23. Police personnel at the Airways Site grew obviously angry and agitated at the pointed criticism of the demonstrators. The young and inexperienced officers, among them defendants Brun, Carruth, Collins, and John Doe(s), appeared particularly affected. Physical altercations nearly broke out on more than one occasion.

24. Police personnel refrained from physically confronting the demonstrators in front of the heavy media presence at the Airways Site.

25. The crowd eventually left the Airways Site and gathered again at the spot of Martavious Banks's shooting. This was at or around the intersection of Gill Avenue and Elvis Presley Boulevard (the "Elvis Presley Site").

26. There were significantly less media at the Elvis Presley Site

27. When defendant Shelton, incensed by the "anti-police rhetoric" she had witnessed at the Airways Site—in particular what she later claimed had been chants of "fuck the police"—learned the demonstrators had gathered at another location, where fewer cameras were present, she gave the order to arrest demonstrators who remained in the streets at the Elvis Presley Site after a single warning to disburse.

28. Upon information and belief, defendant Shelton contemplated and intended the disbursement "warning" merely as a pretense for physically confronting certain outspoken demonstrators and charging them as criminals.

29. By the time Ms. Buress arrived at the Elvis Presley Site, police personnel had blocked the flow of traffic through the intersection. This resulted in a number of demonstrators stepping out into the street. But for the blocking of traffic by police, many demonstrators, including Ms. Buress, would not have left the sidewalks.

30. Defendants Moses, Shelton, and Winston were the supervising officers on scene at the Elvis Presley Site.

31. Defendants Moses and Winston were eager to carry out defendant Shelton's arrest order. Lieutenant Winston would later suggest to internal affairs investigators that he was motivated in part by a desire to placate his agitated subordinates, stating "[T]hey were my task force officers. They had to arrest someone."

32. At some point Lieutenant Moses gave a brief countdown over his loudspeaker. Many of the demonstrators never heard this countdown, or heard only part of it, and there is cause to question the extent to which it was *intended* to be heard and comprehended.

33. Lieutenant Moses counted down from no higher than "five." Because there were numerous demonstrators lying or sitting cross-legged in the street, the "waring" provided no meaningful opportunity for persons to remove themselves from the street.

34. Ms. Buress, who at the time the perpetual warning was given, was speaking through her bullhorn, warning those demonstrators who were sitting or lying in the street to be wary of aggressive police tactics and of oncoming traffic, in the event the police should open back up the street to through traffic. She encouraged these demonstrators to join her in moving the in-street demonstration to the sidewalk.

35. Moments later, defendants Bruns, Carruth, Collins, and John Doe(s) including defendant(s), wearing all-black tactical gear, displaying no visible police badges, never identifying themselves as police or giving any Ms. Buress any audible oral command

7

to halt and allow herself to be apprehended, charged toward her at a full sprint. Reflexively and in fear for her own safety, not realizing in that split second that these large, black-clad, unidentified men rushing toward her were law enforcement, Ms. Buress ran for her life.

36. At the time the defendants rushed at her, Ms. Buress was posing no reasonable threat to herself or others. Nor was she breaking any law, because the streets had already been blocked off by police, there was no immediate danger or hazard, and she was engaging in protected First Amendment activity.

37. Upon information and belief, one or more of the defendants charging at Ms. Buress, or one or more of their supervisors, targeted Ms. Buress in retaliation for her rhetoric at the Airways and Elvis Presley Sites

38. As Ms. Buress ran from around a parked car, seeking to *get off of* the street, defendant Carruth, who was running full-speed toward her, sidestepped Ms. Buress's trajectory and forcefully "clotheslined" her, swinging his outstretched arm directly into her throat, catching her under her chin.

39. The force of the blow knocked Ms. Buress to the ground. Her head slammed into the pavement as she fell, disorienting and concussing her and causing multiple contusions and lacerations on her face, head and body.

40. The violent blow to Ms. Buress's throat knocked the wind out of her and caused her to experience the terrifying sensation that her throat had collapsed. Her air supply was temporarily interrupted, causing her extreme alarm.

41. As soon as Ms. Buress hit the pavement, defendant Carruth pounced on top of her, drove his knee into her ribs and breasts, and punched her one or more times in the face.

42. Within seconds, as Ms. Buress struggled to breathe and get her bearings, defendants Bruns, Collins, Gross, and Doe(s) piled on top of her. They rolled her over,

pressed her face into the pavement, and repeatedly punch, kneed, and kicked her helpless, immobilized body.

43. Ms. Buress repeatedly yelled "I can't breathe!" as the defendants abused and manhandled her. In response, the defendants laughed and taunted her.

44. Upon information and belief, one or more of the defendants deliberately pulled down Ms. Buress's pants, exposing her genitals and buttocks.

45. Defendants Bruns, Carruth, Collins, Gross, or Doe slapped handcuffs on Ms. Buress, deliberately overtightening them around her wrists far beyond what was reasonably necessary, causing her extreme pain, loss of circulation, and contusions and lacerations on her wrists.

46. While Ms. Buress's pants were still pulled down, her genitals and buttocks exposed, without deigning to assist her in this respect, one or more of the defendants paraded her around in front of onlookers and police personnel.

47. The events described in paragraphs 32–46 occurred in the immediate presence of defendants Moses, Winston, and John Doe(s), who at no time intervened in, or commanded to cease, the outrageous and unlawful conduct of their subordinates.

48. Upon information and belief, defendants Moses, Shelton, Winston, John Doe(s), or some combination thereof, encouraged the rough treatment and humiliation of Plaintiff and other demonstrators.

49. The defendants subsequently took Ms. Buress into custody and charged her, without probable cause, with the criminal offenses of obstructing a highway, disorderly conduct, assault, evading arrest, resisting arrest, and inciting a riot. All but two of the charges were promptly dropped. The remaining charges remain pending.

50. The conduct of the defendants described above is prime faice proof of inadequate training, oversight, and supervision within the MPD, and particularly within the OCU.

51. Upon information and belief, defendant Hardy had for some time prior to this incident encouraged or acquiesced to a culture and attitude within the OCU that encouraged conduct of the sort herein attributed to the defendants.

52. Defendant Rawlings was reckless or grossly negligent in failing to take corrective action, prior to the events described herein, against defendant Collins, who had as a probationary officer, had shot and killed a suspect only months before.

53. Upon information and belief, defendant Rawlings was reckless or grossly negligent in failing to take corrective action with respect to one or more other defendants who had exhibited violent tendencies and intemperate dispositions prior to the events described herein.

## FEDERAL CAUSES OF ACTION

54. The allegations set forth in paragraphs 1–53 are hereby reiterated and incorporated by reference as if fully stated hereunder.

55. The hereinabove described actions and omissions, engaged in under color of state authority by the defendants, including the City, sued as a person, responsible because of its authorization, condonation, and ratification of the acts of its agents, deprived Ms. Buress of certain rights secured to her by the United States Constitution, including without limitation her First Amendment rights to freedom of expression and petition, her Fourth Amendment Right to be free from unreasonable seizure of her person, her Fifth and Fourteen Amendment rights to due process of law, including the right to be free from unjustified and excessive force utilized by police, her Eighth Amendment Right to be free from cruel and unusual punishment, and her Fourteenth Amendment rights to the

unabridged privileges and immunities due United States citizens and to the equal protection of the law.

56. The violations cited under this count caused Ms. Buress grievous injury and were sufficiently outrageous, egregious and shocking to the conscience to entitle her to punitive or exemplary damages.

## PENDENT CAUSES OF ACTION

57. The allegations set forth in paragraphs 1–53 are hereby reiterated and incorporated by reference as if fully stated hereunder.

58. The acts and conduct hereinbefore alleged constitute false arrest and imprisonment; assault and battery; intentional infliction of emotional distress; malicious prosecution; abuse of process; prima facie tort; prima facie civil conspiracy; negligent, grossly negligent, and reckless conduct; negligent, grossly negligent, and reckless hiring and retention; and negligent, grossly negligent, and reckless training and supervision under the laws of the State of Tennessee. This Court has pendent jurisdiction to hear and adjudicate these claims.

59. The violations cited under this count caused Ms. Buress grievous injury and were sufficiently outrageous, egregious and shocking to the conscience to entitle her to punitive or exemplary damages.

## PRAYER

WHEREFORE, Plaintiff Barbara Buress demands that a jury be empaneled to hear and decide all issues set forth or fairly raised herein, and a judgment granting the following relief, jointly and severally, against all the defendants:

    A.    Compensatory damages in the amount of $150,000.00;

    B.    Punitive or exemplary damages in the amount of $750,000.00;

    C.    Litigation costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.  Such other and further relief as this Court may deem just and proper under the circumstances.

Respectfully submitted,

/s/ Jacob Webster Brown
Bruce S. Kramer (7472)
Jacob Webster Brown (TN 36404)
APPERSON CRUMP PLC
6000 Poplar Avenue, Suite 150
Memphis, Tennessee 38119
Telephone:   (901) 756-6300
Facsimile:    (901) 757-1296
bkramer@appersoncrump.com
jbrown@appersoncrump.com
*Attorneys for Plaintiff*