**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| BARBARA BURESS, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DYLAN BRUNS, MARIO CARRUTH, ) | |
| MALCOM COLLINS, JOHN DOE(S) ) | Case No. 2:19-cv-02640-JPM-cgc |
| ANDREW GROSS, MICHAEL HARDY, ) | |
| DEXTER MOSES, MICHAEL ) | |
| RALLINGS, DOREEN SHELTON, ) | |
| FRANK WINSTON, and THE CITY OF ) | |
| MEMPHIS, TENNESSEE, ) | |
| ) | |
|     Defendants. ) | |

---

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

Before the Court is Defendants Mario Carruth, Malcom Collins, Andrew Gross, Dexter Moses, Doreen Shelton and Frank Winston's (collectively the "Defendant Officers")[1] Motion to Dismiss, filed on March 3, 2023.  (ECF No. 70.)  Also before the Court is Michael Rallings[2] ("Mr. Rallings") and the City of Memphis, Tennessee's ("Memphis") Motion to Dismiss, filed on the same day.  (ECF No. 71.)

For the reasons set forth below, the Defendants' Motions to Dismiss are **GRANTED** in their entirety.  All of Plaintiff's claims are **DISMISSED WITH PREJUDICE** except for her state tort law malicious prosecution claim against the Defendant Officers, which is **DISMISSED WITHOUT PREJUDICE**.

---

[1] Dylan Bruns and Michael Hardy were never subject to service.  (ECF No. 75 at PageID 309.)
[2] Michael Rallings is incorrectly named as "Michael Rawlings" in the Complaint.  (ECF No. 71 at PageID 292.)

I.    **BACKGROUND**

a.  **Factual Background**

Plaintiff is "a United States citizen and political activist," as well as a citizen of Tennessee. (ECF No. 1 ¶¶ 1, 5.) The Defendant Officers are law enforcement officers who are or have been employed by the Memphis Police Department ("MPD"). (Id. ¶¶ 6–13.) Mr. Rallings is or was "the duly appointed director" of the MPD "[a]t all times pertinent" to the instant action. (Id. ¶ 15.)

Plaintiff participated in a demonstration that took place "at or around the intersection of Gill Avenue and Elvis Presley Boulevard" in Memphis, Tennessee on September 19, 2018. (Id. ¶¶ 21, 25, 29.) This demonstration was a continuation of a demonstration that had occurred "at or around the . . . intersection of Truitt Street and Airways Boulevard," also in Memphis, earlier on that same day. (Id. ¶ 21.) These protests were aimed at expressing dissatisfaction with the MPD in the wake of the shooting of Montavious Banks by MPD officers. (Id. ¶ 20.) Plaintiff describes the protests as "vocal," and notes that "[p]hysical altercations nearly broke out on more than one occasion." (Id. ¶¶ 22–23.)

Plaintiff alleges that Doreen Shelton was "incensed by the 'anti-police rhetoric' she had witnessed at the Airways Site" and "gave the order to arrest demonstrators who remained in the streets at the Elvis Presley Site." (Id. ¶ 27.) Plaintiff further alleges that there was a disbursement warning, with Doreen Shelton "contemplate[ing] and intend[ing] the disbursement 'warning' merely as a pretense for physically confronting certain outspoken demonstrators and charging them as criminals." (Id. ¶ 28.) Plaintiff alleges that MPD officers also forced the protestors onto the street by blocking the flow of traffic through the intersection. (Id. ¶ 29.) Plaintiff pleads that Dexter Moses then "gave brief countdown" that "provided no

2

meaningful opportunity for persons to remove themselves from the street." (Id. ¶¶ 32–33.) Plaintiff alleges that she was subsequently physically attacked and humiliated by the Defendant Officers. (Id. ¶¶ 35–46.)

Plaintiff was arrested by one or more of the Defendant Officers on September 19, 2018. (Id. ¶ 45.) She was subsequently charged with "obstructing a highway, disorderly conduct, assault, evading arrest, resisting arrest, and inciting a riot." (Id. ¶ 49.) Plaintiff brings claims for violations of her First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 ("§ 1983"). (Id. ¶ 55.) Plaintiff also brings supplemental claims for "false arrest and imprisonment; assault and battery; intentional infliction of emotional distress; malicious prosecution; abuse of process; prima facie tort; prima facie civil conspiracy; negligent, grossly negligent, and reckless conduct; negligent, grossly negligent, and reckless hiring and retention; and negligent, grossly negligent, and reckless training and supervision under the laws of the State of Tennessee." (Id. ¶ 58.)

### b. Procedural Background

Plaintiff filed her Complaint in the instant case on September 20, 2019. (ECF No. 1.) The City of Memphis and Mr. Rallings filed an Answer on November 18, 2019. (ECF No. 24.) The City of Memphis and Mr. Rallings filed an Amended Answer on November 20, 2019. (ECF No. 25.)

A Scheduling Conference was held on December 10, 2019, at which the Defendants made an oral Motion to stay the proceedings in the instant case. (ECF No. 39.) Plaintiff did not oppose that Motion, as her state-level criminal charges were pending at that time. (ECF No. 48 at PageID 159.) The Court granted the Defendants' oral Motion to stay proceedings on December 30, 2019. (ECF No. 49.) On February 16, 2021, the Court administratively closed

the instant case because of delays in Plaintiff's criminal proceeding resulting from the COVID-19 pandemic.  (ECF No. 62 at PageID 259–260.)

Plaintiff filed a Motion to set a status conference on December 6, 2022, informing the Court that she was no longer facing criminal charges and intended to move for the administrative reopening of the instant case.  (ECF No. 63 at PageID 262.)  The Court granted that Motion on December 7, 2022.  (ECF No. 64.)  A status conference was held on January 25, 2023.  (ECF No. 66.)  The Court reopened the instant case on that same day.  (ECF No. 66.)

As previously stated, the Defendant Officers filed the first instant Motion to Dismiss on March 3, 2023.  (ECF No. 70.)  Mr. Rallings and Memphis filed the second instant Motion to Dismiss on the same day.  (ECF No. 71.)  Plaintiff filed a Response in Opposition to both Motions on April 10, 2023.  (ECF No. 78.)  The Defendant Officers filed a Reply on May 4, 2023.  (ECF No. 83.)  Mr. Rallings and Memphis filed a Reply on May 5, 2023.  (ECF No. 86.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery.  Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage.  <u>Iqbal</u>, 556 U.S. at 679.  "[A] formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555.  The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level."  <u>Ass'n of Cleveland Fire Fighters v. City of Cleveland</u>, 502 F.3d 545, 548 (6th Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A complaint need not contain detailed factual allegations.  <u>Twombly</u>, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery."  <u>Iqbal</u>, 556 U.S. at 678-79; <u>Green v. Mut. of Omaha Ins. Co.</u>, No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), <u>aff'd</u>, 481 F. App'x 252 (6th Cir. 2012).  A court "need not accept as true legal conclusions or unwarranted factual inferences."  <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  <u>Iqbal</u>, 556 U.S. at 679.  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Twombly</u>, 550 U.S. at 555.

### III.   ANALYSIS

#### a.  Claims That Plaintiff Does Not Pursue

Plaintiff concedes that her "Fourth Amendment claims for excessive force, as well as her state-law claims sounding under Tennessee's Governmental Tort Liability Act are time-

barred." (ECF No. 78 at PageID 320.)   Such claims are therefore **DISMISSED WITH PREJUDICE**.

Plaintiff also concedes that the Complaint "fails to include sufficiently specific allegations to state plausible claims against Director Rallings or the City." (Id. at PageID 315.) Such claims are therefore **DISMISSED WITH PREJUDICE**.

Defendant Dylan Bruns and Michael Hardy were never subject to service. (ECF No. 75 at PageID 309.)   Plaintiff's claims against them are therefore **DISMISSED WITHOUT PREJUDICE**.   See Fed.R.Civ.P. 4(m).

### b. Claims for False Arrest and False Imprisonment

Plaintiff maintains her claims for false arrest. (ECF No. 78 at PageID 317.)   The Defendant Officers contend that such claims are time-barred, as they began to accrue on the date of Plaintiff's arrest, September 19, 2018. (ECF No. 70-1 at PageID 281.)

Claims for torts under § 1983 "borrow the statute of limitations governing personal injury actions in the state in which the § 1983 action was brought." Buck v. City of Highland Park, Mich., 733 Fed. App'x. 248, 252 (6th Cir. 2018) (quoting Banks v. City of Whitehall, 344 F.3d 550, 553 (6th Cir. 2003)).   In Tennessee, the statute of limitations for personal injury actions is one year.   See Tenn. Code Ann. §28-3-104(a)(3); see also Merriweather v. City of Memphis, 107 F.3d 396, 398 (6th Cir. 1997).   Plaintiff was arrested on September 19, 2018. (ECF No. 70-1 at PageID 281.)   Plaintiff was released from police custody on September 20, 2018.[3]   The instant Action was filed on September 20, 2019. (See ECF No. 1.)   It is therefore the case that, if the statute of limitations runs from the date of Plaintiff's arrest, her claims are

---

[3] The date of Plaintiff's release from police custody is established by the transcript of the telephonic scheduling conference held on March 10, 2023, and is undisputed. (See ECF No. 73.)

time-barred.  If the statute of limitations runs from the date of her release, however, her claims are not time-barred and the Court should evaluate her claims on their merits.

Plaintiff brings claims against the Defendant Officers for "false arrest and imprisonment."  (ECF No. 1 ¶ 58.)  Under both federal law and Tennessee law, "'the claims of false arrest and false imprisonment are the same' . . . when the alleged false imprisonment arises out of an alleged false arrest by a law-enforcement officer."  Weser v. Goodson, 965 F.3d 507, 517 (6th Cir. 2020) (quoting Lee v. Ritter, No. 1:02-CV-282, 2005 WL 3369616, at *20 (E.D. Tenn. Dec. 12, 2005)); see also Wallace v. Kato, 549 U.S. 384, 388 ("False arrest and false imprisonment overlap; the former is a species of the latter").  "A false arrest by a police officer is one means of committing a false imprisonment."  Lee, 2005 WL 3369616, at *20.  Where an alleged false imprisonment follows an alleged false arrest, a plaintiff's "claim of wrongful continued incarceration constitutes an ill effect from [the plaintiff's] false arrest."  McCune v. City of Grand Rapids, 842 F.2d 903, 906 (6th Cir. 1988); see also Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982).  The Sixth Circuit has held that "the nature of the claims of false arrest and false imprisonment by police officers acting while on duty are essentially the same since the alleged false imprisonment arises out of and logically follows the arrest of plaintiffs."  Walker v. Schaeffer, 854 F.2d 138, 142 (6th Cir. 1988).  Tennessee courts have applied the reasoning of the Sixth Circuit to state law claims for the torts of false arrest and false imprisonment.  Gray v. 26th Jud. Drug Task Force, No. 02A01-9609-CV-00218, 1997 WL 379141, at *2 (Tenn. Ct. App. July 8, 1997) (citing McCune, 842 F.2d at 906).  In Tennessee, therefore, the statute of limitations for violations of constitutional rights arising out of one's arrest begin to run on the date of one's arrest.  This is true even if a period of incarceration follows that arrest.  Id.

However, the statute of limitations begins to run when a plaintiff is released from custody or lawfully detained if the plaintiff's "claim for false imprisonment stands alone." Lovell v. Warren Cnty., No. M201900582COAR3CV, 2019 WL 6842380, at *2 (Tenn. Ct. App. Dec. 16, 2019).  The Lovell court reasoned that a plaintiff may not have "access to the courts until [their] imprisonment ends." Id. at *3.  Plaintiff argues that Lovell controls in the instant case, while the Defendant Officers argue that Gray controls.

Many courts, and the Second Restatement of Torts, start running the statute of limitations for the tort of false imprisonment on the date that an individual is released from custody, regardless of whether claims for the torts of false arrest and false imprisonment are brought in a single action.  See Gose v. Bd. of Cnty. Comm'rs of Cnty. of McKinley, 727 F. Supp. 2d 1256, 1265 (D.N.M. 2010) (collecting cases); see also Restatement (Second) of Torts § 899, cmt. c (1979) ("For false imprisonment, the statute [of limitations] begins to run only when the imprisonment ends, since the period of imprisonment is treated as a unit."); contra Leatherwood v. Key West, 347 So.2d 441, 442 (Fla. App. 1977); Parker v. Mississippi Game & Fish Comm'n, 555 So.2d 725, 727 (Miss. 1989).  Running the statute of limitations in this way would also seem to comport with policy arguments set out by the state courts of Tennessee.

> If we held that the statute of limitations for false imprisonment begins to run on the date the imprisonment or confinement begins, a plaintiff may be denied the opportunity to file an action for false imprisonment due to circumstances beyond his or her control. We would not be promoting fairness and justice, and the statute of limitations would be wielded as a sword rather than as a shield.

Lovell, 2019 WL 6842380, at *3; see also Wallace, 549 U.S. at 389 (noting that "false imprisonment is subject to a distinctive rule [that the statute of limitations runs when the term of false imprisonment ends]—dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned").

Defendant Officers argue that "because Plaintiff has filed these two claims together, they should be viewed together."  (ECF No. 83 at PageID 343.)  However, the choice of the correct statute of limitations should be made by considering the "gravamen of the complaint." Redwing v. Cath. Bishop for Diocese of Memphis, 363 S.W.3d 436, 457 (Tenn. 2012) (quoting Whaley v. Perkins, 197 S.W.3d 665, 670 (Tenn. 2006)).  "It does not involve the 'designation' or 'form' of the action."  Pera v. Kroger Co., 674 S.W.2d 715, 719 (Tenn. 1984).  In this instant case, this is a distinction without a difference, as "'the claims of false arrest and false imprisonment are the same' . . . when the alleged false imprisonment arises out of an alleged false arrest by a law-enforcement officer."  Weser, 965 F.3d at 517 (quoting Lee, 2005 WL 3369616, at *20).  Under Tennessee law, any claim for false imprisonment that was preceded by a false arrest by a law enforcement officer will have its statute of limitations run from the date of an individual's arrest, regardless of the form of the pleadings.  As Plaintiff pleads that her false imprisonment followed a false arrest, the "gravamen of the complaint" is false arrest, and false imprisonment is an ill effect stemming from that false arrest.  Redwing, 363 S.W.3d at 457; see also Gray, 1997 WL 379141, at *2.

The statute of limitations on Plaintiff's claim began to run on September 19, 2018, the date of Plaintiff's arrest, pursuant to Tennessee law, and therefore Plaintiff's claim is time-barred.  Defendant Officers' Motion to Dismiss is **GRANTED** as to Plaintiff's claims for false arrest and false imprisonment.

c.  *Claims for Malicious Prosecution*

Plaintiff maintains her claims for malicious prosecution.  (ECF No. 78 at PageID 317; see also ECF No. 1 ¶ 55.)  Plaintiff alleges that the Defendant Officers violated her Fourth Amendment rights under § 1983.  (ECF No. 1 ¶ 55.)  Claims for malicious prosecution are

"constitutionally cognizable" and arise "under the Fourth Amendment." Weser, 965 F.3d 507,

513 (citing Howse v. Hodous, 953 F.3d 402, 409 (6th Cir. 2020)). Plaintiff additionally

characterizes her claim for malicious prosecution as a pendent cause of action brought as a state-

law tort claim. (ECF No. 1 ¶ 58.)

### i. Federal Malicious Prosecution

"Suits against law enforcement officers under 42 U.S.C. § 1983 for the deprivation of a

constitutional right are subject to the doctrine of qualified immunity." Meeks v. City of Detroit,

Mich., 727 F. App'x 171, 176 (6th Cir. 2018). "Law-enforcement officers enjoy qualified

immunity from suit when their conduct 'does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" King v. Harwood, 852

F.3d 568, 582 (6th Cir. 2017) (quoting White v. Pauly, 580 U.S. 73, 79 (2017)).

> "To make out a claim of malicious prosecution, the plaintiff must establish that:
> (1) the defendant made, influenced, or participated in the decision to prosecute
> the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as
> a consequence of the legal proceedings, the plaintiff suffered a deprivation of
> liberty apart from the initial arrest; and (4) the criminal proceeding was resolved
> in the plaintiff's favor."

Meeks, 727 F. App'x at 176 (citing Webb v. United States, 789 F.3d 647, 659 (6th Cir.

2015)). Plaintiff and the Defendant Officers agree that a criminal action was instituted against

Plaintiff, that the prosecution ended in Plaintiff's favor, and that Plaintiff spent a night in jail.

(ECF No. 70-1 at PageID 281, 285.) Prongs three and four are therefore satisfied.

The Defendant Officers argue that the grand jury's return of a true bill established

probable cause for Plaintiff's arrest, and therefore that Plaintiff cannot satisfy the second prong

of this test. (ECF No. 70-1 at PageID 285.) However, no court has found that "a *subsequent*

grand jury indictment can establish probable cause for an earlier arrest." Radvansky v. City of

Olmsted Falls, 395 F.3d 291, 307-08 n. 13 (6th Cir. 2005) (collecting cases) (emphasis in the

original).  Defendants' argument is therefore unavailing.  Plaintiff specifically alleges that she was targeted as a leader in a demonstration, and that the Defendant Officers did not have probable cause for her arrest.  (See generally ECF No. 1.)  Construing Plaintiff's pleadings in the light that is the most favorable to her, she sufficiently alleges that there was not probable cause for her prosecution upon her arrest.

However, Plaintiff has not made a showing that would satisfy the first prong of this test. "A police officer violates [the Fourth Amendment's] restrictions only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause."  Newman v. Twp. of Hamburg, 773 F.3d 769, 772 (6th Cir. 2014).  "[P]laintiff, having sued [the Defendant Officers] for violation of [her] civil rights, to overcome their assertion of qualified immunity, [is] obliged to allege facts describing how each defendant's conduct violated a federally protected right under clearly established law."  Johnson v. Moseley, 790 F.3d 649, 656 (6th Cir. 2015) (citing Iqbal, 556 U.S. at 684–86; Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 681 (6th Cir. 2011)).

Plaintiff makes a specific allegation in her Complaint that "Lieutenant [Frank] Winston['s]" detention of Plaintiff was motivated by his desire to arrest a demonstrator, and that he made a statement to that effect to "internal affairs investigators."  (ECF No. 1 ¶ 31.) Plaintiff also alleges that "[Doreen] Shelton" gave demonstrators a single warning to disburse "merely as a pretext" for "charging" "certain outspoken demonstrators" "as criminals."  (Id. ¶¶ 27–28.)  While Plaintiff makes other accusations of wrongdoing against other officers, they relate to alleged incidents of violence or humiliation and not to the motives for arrest or the course of her subsequent prosecution.  (See id. ¶¶ 30–49.)

Plaintiff does not plead that any of the Defendant Officers "made, influenced, or participated in the decision to prosecute" her.  Webb, 789 F.3d at 660, 665.  Plaintiff does not allege that any of Defendant Officers made any false statement that was material to the prosecution of her case.  See id.  "[T]he requisite participation in the decision to prosecute after probable cause has ceased to exist must amount to 'aiding' the decision in more than a passive or neutral way."  Johnson, 790 F.3d at 656.  To maintain a claim for malicious prosecution, a Plaintiff must plead that a defendant officer "aided in the decision to prosecute" her.  Novak v. City of Parma, Ohio, 33 F.4th 296, 307 (6th Cir. 2022), cert. denied, 143 S. Ct. 773 (2023).  While Plaintiff specifically alleges that two officers engaged in unlawful conduct, Plaintiff makes no claim that those officers were involved in the decision to charge or prosecute her, as would be relevant to a claim for malicious prosecution.

Defendant Officers' Motion to Dismiss is **GRANTED** as to Plaintiff's § 1983 claim for malicious prosecution.  The Defendant Officers are entitled to qualified immunity.

*ii.  State Malicious Prosecution*

"[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."  Rouster v. County of Saginaw, 749 F.3d 437, 454 (6th Cir. 2014) (quoting Moon v. Harrison Piping Supply, 465 F.3d 719, 728 (6th Cir. 2006); see also Hucul Advertising, LLC v. Charter Tp. Of Gaines, 748 F.3d 273, 281 (6th Cir. 2014) ("Under 28 U.S.C. § 1367(c), a district court 'may decline' to exercise supplemental jurisdiction 'if . . . the district court has dismissed all claims over which it has original jurisdiction'") (quoting 28 U.S.C. § 1367(c)).  As the only remaining claim in the instant action is a state law claim, the Court will **DISMISS WITHOUT PREJUDICE** Plaintiff's state law

claim for malicious prosecution.  She may pursue this claim, to the degree that it remains available, in the appropriate state court.

### IV.     CONCLUSION

For each of the reasons set forth above, the Defendants' Motions to Dismiss are **GRANTED**.  All of Plaintiff's claims are **DISMISSED WITH PREJUDICE** except for her state tort law malicious prosecution claim against the Defendant Officers, which is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**, this 16th day of June, 2023.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE